Citation Nr: 1719266 
Decision Date: 05/23/17 Archive Date: 06/06/17

DOCKET NO. 16-19 321 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Baltimore, Maryland


THE ISSUES

1. Entitlement to service connection for the cause of the Veteran's death. 

2. Entitlement to Dependency, Indemnity and Compensation (DIC) under the provisions of 38 U.S.C.A. § 1318.

3. Entitlement to nonservice-connected death pension. 

4. Entitlement to accrued benefits.


REPRESENTATION

Appellant represented by: Military Order of the Purple Heart of the U.S.A.


ATTORNEY FOR THE BOARD

LM Stallings, Associate Counsel


INTRODUCTION

The Veteran served on active duty from April 1943 to November 1945; earning a Combat Infantry Badge and a Bronze Star Medal. The Veteran died in May 2013. The Appellant is the Veteran's surviving spouse. 

These matters are before the Board of Veterans' Appeals (Board) on appeal from a rating decision dated December 2013 by the Department of Veterans Affairs (VA) Regional Office (RO) in Philadelphia, Pennsylvania.

A Board hearing in this matter was scheduled for December 2016. The Appellant, through her representative, withdrew her request for a hearing in December 2016 correspondence. 38 C.F.R. § 20.702(e) (2016). 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issue of service connection for the Veteran's cause of death is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).






FINDINGS OF FACT

1. The Veteran was not in receipt of total service-connected disability rating for 10 years at the time of his death, his death occurred more than 10 years after his separation from active duty service, and he was not a former prisoner of war (POW).

2. The Appellant has reported countable income of $19,980 for 2013, in excess of the maximum annual pension rate of $8,485 for entitlement to nonservice-connected death pension benefits. 

3. At the time of his death, the Veteran was not entitled to periodic monetary benefits under existing ratings or decisions which were due and unpaid, nor was he entitled to periodic monetary benefits based on evidence in the file at the date of his death, which were due and unpaid. 


CONCLUSIONS OF LAW

1. The criteria for entitlement to DIC benefits pursuant to 38 U.S.C.A. § 1318 have not been met. 38 U.S.C.A. § 1318 (West 2014); 38 C.F.R. § 3.22 (2016). 

2. The criteria for entitlement to nonservice-connected death pension have not been met. 38 U.S.C.A. § 1503, 1521, 1541, 1543, 5312; 38 C.F.R. §§ 3.2, 3.3, 3.23, 3.271, 3.272, 3.273.

3. The legal requirements for establishing entitlement to accrued benefits have not been met. 38 U.S.C.A. § 5121; 38 C.F.R. § 3.1000.



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

A. Notice and Assistance

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159.

VA has a duty to provide the Appellant notification of the information and evidence necessary to substantiate the claims submitted, the division of responsibilities in obtaining evidence, and assistance in developing evidence, pursuant to the Veterans Claims Assistance Act of 2000 (VCAA). See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). 

With respect to the claims under 38 U.S.C.A. § 1318 and 38 U.S.C.A. § 5121, the claims are denied as a matter of law. The VA General Counsel has interpreted that VA's duties to notify and assist are inapplicable where undisputed facts render a claimant ineligible for the benefit claimed and where further factual development could not lead to an award. VAOPGCPREC 2-2004; VAOPGCPREC 5-2004. Where the law is dispositive, the claim must be denied due to a lack of legal merit. As the claims for accrued benefits and DIC under 38 U.S.C.A. § 1318 are decided as matters of law, no discussion of the duties to notify and assist is required. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994); Mason v. Principi, 16 Vet. App. 129 (2002); Dela Cruz v. Principi, 15 Vet. App. 143, 149 (2001). 

Also, the Board acknowledges that the issue of entitlement to service connection for the cause of the Veteran's death is being remanded for additional development, however, as the issue of DIC pursuant to 38 U.S.C.A. § 1318 is solely a matter of statutory interpretation, the claim is not inextricably intertwined with the cause of death claim and the Board may adjudicate it accordingly.

As for the issue of entitlement to nonservice-connected death pension, the Appellant was afforded a September 2013 VCAA notice regarding all of her claims. This notice included information regarding what actions she needed to undertake and how VA would assist her in developing her claims. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

With regard to VA's duty to assist the Appellant with her claim for nonservice-connected death pension, the record reflects that the VA has made reasonable efforts to obtain relevant records adequately identified by the Appellant. She has not pointed to any additional evidence pertinent to the nonservice-connected death pension issue that may be available, but has not been obtained. Therefore, the VA's duty to assist in the development of this claim has been met. 

B. Legal Analysis 

 1. DIC under 38 U.S.C.A. § 1318

A surviving spouse may establish entitlement to DIC in the same manner as if the Veteran's death were service connected where it is shown that the Veteran's death was not the result of willful misconduct, and the Veteran (1) was continuously rated totally disabled for the 10 years immediately preceding death; (2) was rated totally disabled upon separation from service, was continuously so rated, and died more than five but less than ten years after separation from service; or (3) the Veteran was a former prisoner of war (POW) who died after September 30, 1999, and the disability was continuously rated totally disabling for a period of not less than one year immediately preceding death. 38 U.S.C.A. § 1318(b); 38 C.F.R. § 3.22(a).

The Veteran in this case had been awarded service connection for PTSD and residuals for cold injuries to the right foot, left foot, the ears, the nose, right hand, left hand, and the face for a combined rating of 60%, in an August 2008 rating decision, effective December 14, 2007. A November 2008 rating decision increased the Veteran's PTSD rating for a combined rating of 70%, effective October 14, 2008. He was therefore not in receipt of a total disability during the 10 years preceding his death in May 2013. Furthermore, the Veteran died more than 10 years after his separation from service and was not a former POW. Therefore, there is no legal basis for entitlement to DIC under 38 U.S.C.A. § 1318, and the claim must be denied. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). 

 2. Nonservice-Connected Death Pension

The Appellant is the surviving spouse of a veteran who had qualifying wartime service; as such, she may be entitled to a rate of pension set by law, reduced by the amount of her countable income. 38 U.S.C.A. §§ 1541, 1543; 38 C.F.R. § 3.3(b)(4). Basic entitlement exists if the veteran had qualifying wartime service or if the veteran at the time of death was receiving or was entitled to compensation for a service-connected disability based on service during a period of war. Qualifying service is service in the active military, naval, or air service for 90 days or more during a period of war (or other criteria not applicable in this case). 38 U.S.C.A. §§ 1503, 1521; 38 C.F.R. §§ 3.2, 3.3. In the present case, the Veteran had qualifying service of 90 days or more during a period of war; thus, that eligibility requirement is met.

The annual income of the surviving spouse must not exceed the maximum annual pension rate (MAPR) specified in 38 U.S.C.A. § 5312, increased from time to time as published in the Federal Register. 38 C.F.R. §§ 3.3, 3.23. Income includes payments of any kind from any source during a twelve month period except for exclusions including unreimbursed burial expenses and medical expenses in excess of five percent of the pension rate. 38 U.S.C.A. § 1503; 38 C.F.R. § 3.271(a). Fractions of dollars are ignored when computing income. 38 C.F.R. §§ 3.271, 3.272. General living expenses for utilities, life insurance premiums, housing, and transportation (other than for medical care) are not excludable. 

For the purpose of determining initial entitlement, the monthly rate of pension shall be computed by reducing the applicable MAPR by the countable income on the effective date of entitlement and dividing the remainder by 12. 38 C.F.R. § 3.273(a). Nonrecurring income (income received on a one-time basis) will be counted, for pension purposes, for a full 12-month annualization period following receipt of the income. 38 C.F.R. § 3.271(c). Income from Social Security Administration (SSA) benefits, to include Social Security disability payments, is not specifically excluded under 38 C.F.R. § 3.272, and therefore is included as countable income. Certain unreimbursed medical expenses may be excluded from countable income for the same 12-month annualization period to the extent they were paid. To be considered, the total expense must be in excess of five percent of the MAPR. 38 C.F.R. § 3.272.

In the present case, the MAPR for 2013 was $8,485.00 for survivors with no dependents. In the Appellant's August 2013 claim for DIC benefits, she reported currently monthly income of $1,157 in Social Security benefits, for a total of $13,884 annually. She also wrote that she earned approximately $508.18 per month from other sources, so her total annual income was $19,982.16. No medical or other expenses were listed, and the Appellant has not provided income information for subsequent years or indicated that there has been any change in her income or expenses. 

As set forth above, Congress prohibits the payment of VA death pension to those whose countable income exceeds statutory limits. Because the Appellant's income exceeded the statutory limit, she is not entitled to VA nonservice-connected death pension benefits, and the claim is denied. 38 C.F.R. § 3.273. 

 3. Accrued Benefits

The Appellant has asserted that she is entitled to accrued benefits. The law provides for payment of certain accrued benefits upon death of a beneficiary. 38 U.S.C.A. § 5121. Accrued benefits are the monetary sums which the Veteran was legally entitled to receive from VA at the time of his death but were unpaid. Upon the death of the Veteran, all benefits which are properly payable shall be paid to the Veteran's spouse, if living. 38 U.S.C.A. § 5121(a), 5121(a)(2); 38 C.F.R. § 3.1000(a).

In order for the appellant to be entitled to accrued benefits, the Veteran must have had a claim pending at the time of his death for such benefits or else be entitled to them under an existing rating or decision. 38 U.S.C.A. §§ 5101(a), 5121(a); Jones v. West, 136 F.3d 1296, 1299-1300 (Fed. Cir. 1998). The Veteran received his most recent rating decision in November 2008 and as the Veteran did not file a Notice of Disagreement within one year of the decision, it became final in November 2009. He did not subsequently file any other claim for benefits prior to his death. Therefore, the Veteran did not have any pending claims at the time of his death. 

The Appellant filed her claim for DIC, Death Pension, and Accrued Benefits in August 2013, within the time period required to claim any accrued benefits. The VA sent sufficient VCAA notice in September 2013, advising the Appellant of the necessary evidence to substantiate her claim. 

At the time of his death, the Veteran was service connected for PTSD and residual for cold injuries to the right foot, left foot, the ears, the nose, right hand, left hand, the face at 70% disabling and the Veteran was receiving a corresponding amount of disability compensation. The Appellant received the Month of Death payment in May 2013 and the record indicates that disability compensation was suspended in June 2013. 

The record contains no evidence that the VA owed the Veteran money at the time of his death. There is a statement by the Veteran and Appellant's daughter from May 2012, a year prior to the Veteran's death, indicating that he was owed a payment that had previously been returned to the VA. The record indicates that the RO directed that correct payment be issued to the Veteran. The record does not contain any evidence, nor has the Appellant indicated, that the VA still owed the Veteran the returned payment from early 2012. Therefore, the claim for accrued benefits is also denied.


ORDER

Entitlement to DIC pursuant to 38 U.S.C.A. § 1318 is denied. 

Nonservice-connected death pension benefits are denied. 

Accrued benefits are denied. 


REMAND

A remand is required to obtain outstanding medical records and a VA medical opinion. 

In a statement received in September 2016, the Veteran's daughter reported that the Veteran received regular treatment through the VA for his conditions until he was hospitalized at the Baltimore Washington Medical Center (BWMC) in February 2013, a few months prior to his death. The record contains VA treatment records until January 2008. As VA treatment records are constructively of record and may be pertinent to determining whether entitlement to service connection for cause of the Veteran's death is warranted, updated records from January 2008 until the Veteran's death in May 2013 must be obtained.

As noted in the above decision, at the time of his death, the Veteran was service-connected for posttraumatic stress disorder (PTSD) and cold injury residuals to the feet, ears, nose, hands, and face.

The Veteran's death certificate shows that his cause of death was end stage Parkinson's disease, with respiratory failure and osteomyelitis listed as leading to the immediate cause. 

The Appellant has alleged that the cause of the Veteran's death was related to his service-connected residuals of cold injury. Specifically, she has argued that private treatment records from podiatrist S.D.B. reflect that his residuals of cold injury included lesions and fungal infections. She has indicated that osteomyelitis is an infection of the bone caused by bacteria or a fungus, and has thus alleged that the contributing cause of the Veteran's death of osteomyelitis was related to, or hastened by his service-connected cold injury residuals. 

On March 2008 VA examination, the VA examiner noted that the Veteran suffered from cold injuries from his time with the 10th Mountain Division in World War II. He noted that as a result of his service-connected frostbite, the Veteran had complications with numbness in his feet, fungus infection of his toes, ulcerations of some of the toes, and stiffness of the toes. 

In April 2013, the Veteran was admitted to BWMC after his daughter and a healthcare worker found a wound on his right ankle. The Veteran was diagnosed with osteomyelitis of the right heel and ankle as a result of this wound. He had surgery to debride the osteomyelitic bone five days later. Less than a week later the Veteran went into respiratory failure and never recovered. 

The Veteran received care at BWMC and had been staying at a private rehabilitation facility immediately preceding his death. At the time of his death, the Veteran had diagnoses of osteomyelitis, dehydration, a urinary tract infection, an altered mental status, syncope, and apneic episodes. 

Osteomyelitis is defined as inflammation of the bone caused by infection, usually by a pyogenic organism, although any infectious agent may be involved. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1347 (32d ed. 2012).

As there is evidence the Veteran experienced fungal infections as a result of his service-connected cold injuries and osteomyelitis is listed on his death certificate as a cause of his death, the Board finds that remand for a medical opinion is also necessary. 38 U.S.C.A. § 5103A(a).

Accordingly, the case is REMANDED for the following actions:

(This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Obtain VA medical records of treatment the Veteran received from January 2008 to his death in May 2013. 

2. With any needed assistance from the Appellant, obtain any identified private treatment records, including any treatment records from podiatrist S.D.B. from February 2008 to the Veteran's death in May 2013. If unable to do so, document those efforts for the record. 

3. After completing the development requested in items 1 and 2, forward the Veteran's claims folder to an appropriate clinician for review and for an opinion on the cause of the Veteran's death. 
After reviewing the Veteran's claims folder, the reviewing clinician should provide opinions on the following questions:

(A) Is it at least as likely as not (50 percent or greater probability) that the Veteran's osteomyelitis was caused by service-connected cold injury residuals?

(B) Is it at least as likely as not (50 percent or greater probability) that the Veteran's osteomyelitis was aggravated beyond the normal course of the condition (i.e., any worsening of the condition) by service-connected cold injury residuals?

(C) Is it at least as likely as not (50 percent or greater probability) that the Veteran's service-connected cold injury residuals or PTSD was a principal (primary) or contributory (contributed materially or substantially; combined to cause death; aided or lent assistance to the production of death) cause of the Veteran's death? 

A complete rationale must be provided for all opinions rendered. If the reviewing clinician cannot provide any requested opinion without resorting to speculation, he or she should expressly indicate this and provide a supporting rationale as to why an opinion cannot be made without resorting to speculation.

4. After completing the above actions and any other development as may be indicated by any response received as a consequence of the action taken above, readjudicate the Appellant's claim on appeal in light of all the evidence of record. If the benefit on appeal remains denied, a supplemental statement of the case must be provided to the Appellant and her representative. After the Appellant and her representative have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

The Appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112.



______________________________________________
M. Sorisio
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs